IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLAYTON ANDREW SCHWERS

       Plaintiff,

v.    No. 1-15:cv-00237 RB-WPL

CITY OF ALBUQUERQUE,
RICHARD BERRY,
RAYMOND SCHULTZ,
CHRISTOPHER KERLIN,
JOHN MINGS,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Mr. Schwers, proceeding pro se, sued Police Officers Christopher Kerlin and John Mings, City of Albuquerque Mayor Richard Berry (Mayor Berry), former City of Albuquerque Chief of Police Raymond Schultz (Chief Schultz), and the City of Albuquerque. (Doc. 1.) Mr. Schwers filed an Amended Complaint, alleging damages for civil rights violations. (Doc. 6 at 1–2.) Defendants Mayor Berry, Chief Schultz, and the City of Albuquerque filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 13.) Having reviewed the parties' submissions and arguments, the Court **GRANTS** the motion.

**I. BACKGROUND**

Mr. Schwers had a violent encounter with two Albuquerque Police Department (APD) officers, which left him in the hospital for three days. (Doc. 6 at 4, 6.) On the day of the incident, Mr. Schwers was inside a Subway restaurant when APD Officers Kerlin and Mings asked Mr. Schwers to accompany them outside. (*Id.* at 4, 5.) At the time, Mr. Schwers appeared unkempt and potentially homeless. (*Id.* at 7.) Mr. Schwers refused to leave and he

admits he may not have been "in the correct state of mind to comply." (*Id.* at 4–5.) Officers Kerlin and Mings physically removed Mr. Schwers from the building and then hit Mr. Schwers repeatedly. (*Id.* at 4.) The officers restrained Mr. Schwers, each holding one of Mr. Schwers' arms, and "tried to incapacitate Mr. Schwers by spraying pepper spray" into his mouth. (*Id.* at 5.) At some point, Mr. Schwers was tasered in the back. (*Id.* at 3.) Then, without warning, Officers Kerlin and Mings tased Mr. Schwers repeatedly in the groin. (*Id.* at 4.) Mr. Schwers received ten puncture wounds in the back and groin. (*Id.*) Almost all of the taser marks indicate that Mr. Schwers was "not twisting or fighting." (*Id.*)

After the incident, Mr. Schwers' face was covered in mucus and blood, and "[o]ver 75 photographs were taken before" Mr. Schwers' face was cleaned. (*Id.* at 6.) Minimal photographs were taken of the taser wounds on Mr. Schwers' back and no photographs were taken of the taser wounds on his groin. (*Id.*) One police report stated there were "several" tasings, and the official APD report states that there were "at least four" tasings. (*Id.* at 4.) Mr. Schwers also references a U.S. Department of Justice [DOJ] Complaint to support his claim that the officers used excessive force during this encounter. (*Id.* at 4, 5, 7.)

In his Amended Complaint, Mr. Schwers states very few facts regarding defendants other than Officers Kerlin and Mings. According to the Amended Complaint, APD is more likely to use excessive force against "some people" based on their characteristics. (*Id.* at 7.) Mr. Schwers also argues that Mayor Berry and Chief Schultz failed to protect the public from excessive force and provide appropriate policies to ensure that the APD and supervising officers were held accountable to those policies. (*Id.* at 1–2.) The Amended Complaint states that Chief Schultz and the City of Albuquerque failed to investigate the violent encounter (*id.* at 6) and failed to

"provide training or supervision" on less-than-lethal force, reporting requirements, accountability policies, and investigation requirements (*Id.* at 4).

Mr. Schwers' Response further identifies five settlements the APD entered into that allegedly show a "pattern of practice" by the City of Albuquerque, Mayor Berry, and Chief Schultz. (Doc. 15 at 2.) The Response also references the DOJ Complaint as well as a settlement agreement, asserting that the DOJ found "the excessive force issues in APD are directly linked to supervision of the officers by the leadership in APD and the policies and supervision." (*Id.* at 4–5.)

## II. LEGAL STANDARD

### a. Pleading Requirements

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may raise a motion to dismiss for "failure to state a claim upon which relief can be granted." Although a complaint need not include "detailed factual allegations," it must assert sufficient facts beyond "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). These factual allegations must exist in the complaint, not subsequent filings. *See Bauchman v. West High School*, 132 F.3d 542, 550 (10th Cir. 1997).

Moreover, the complaint must allege facts that, if accepted as true, " 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] court considering a motion to dismiss can . . . begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. 662 at 679. A claim will only survive if enough factual matter remains to suggest each element of the claim. *Twombly*, 550 U.S. at 563.

### III. DISCUSSION

#### a. Pro se Plaintiff

The Court must construe Mr. Schwers' pleadings and arguments liberally, but it cannot expand upon Mr. Schwers' allegations or add facts to support his claims. Courts must review pro se "pleadings and other papers liberally and hold them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Pro se status does not entitle Plaintiff to different rules of civil procedure. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002). The Court may not assume that a pro se plaintiff can prove facts the plaintiff has not alleged, nor that a defendant has violated laws in ways the plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). The Court may not act as an advocate for a pro se litigant. *See Hall,* 935 F.2d at 1110.

#### b. Facts Alleged in the Response

Mr. Schwers alleges several additional facts in his Response, but the Court cannot consider them as part of the Amended Complaint. *See Bauchman*, 132 F.3d at 550. The Court does not consider the five individual settlements, the DOJ finding that "the lack of policies for open transparency, supervision, and oversight leads to excessive force by police officers," or any outside facts alleged in the DOJ Complaint that may tend to support a claim. Thus, the Court refrains from making any holding regarding whether these facts could be sufficient to support a plausible claim that the defendants caused the alleged use of excessive force.

### c. Liability Under Section 1983

42 U.S.C. Section 1983 holds government defendants liable where defendants "subjected or caused to be subjected, any citizen . . . or other person . . . to the deprivation of any rights" guaranteed by federal law. In both supervisory and municipal liability under Section 1983, there must be a sufficient causal connection between the defendant's wrongful conduct and the constitutional violation. *Iqbal*, 556 U.S. at 678 (acknowledging that vicarious liability does not apply in Section 1983 actions against municipalities or supervisors).

#### i. Claims Against Mayor Berry and Chief Schultz

Individual supervisors may only be held liable for their own conduct, and not "for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 675. Instead, "it is incumbent upon a plaintiff to identify *specific* actions taken by *particular* defendants in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (internal quotations removed). Moreover, each defendant must take a "deliberate, intentional act" to be liable under Section 1983. *Porro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010).

The claim that Mayor Berry failed to "protect the public" and provide appropriate policies to hold officers accountable (s*ee* Doc. 6 at 1) is insufficient to survive the Motion to Dismiss. The Amended Complaint fails to mention any actions taken or decisions made by Mayor Berry. (*See id.*) Consequently, the allegation rests solely on this single, conclusory statement, which is "not entitled to the assumption of truth." *See Iqbal*, 556 U.S. at 679. The action against Mayor Berry, therefore, is dismissed.

The Amended Complaint also fails to state a claim against Chief Schultz. Mr. Schwers alleges that Chief Schultz failed "to protect the public" and provide appropriate policies to hold

officers accountable.  (*See* Doc. 6 at 2.)  Based on Chief Schultz's role as supervisor, the Amended Complaint could also be liberally construed to allege that Chief Shultz failed to train or provide supervision on "Less-Than-Lethal Force, report[ing] requirements, accountability policies," and conducting investigations (*id.* at 4) and failed to investigate a fabricated report (*see id.* at 4, 6).  However, Mr. Schwers alleges no facts that tend to show that Chief Shultz made an intentional decision not to train, supervise, or investigate the alleged fabricated report.  *See Porro*, 624 F.3d at 1327–28.  The Amended Complaint thus fails to state a claim against Chief Schultz, upon which relief may be granted.

### ii. Claims Against the City of Albuquerque

A municipality can be liable under Section 1983, but only where "the municipality *itself* causes the constitutional violation at issue."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).  A municipality may cause a violation "through policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.") (internal quotations omitted).  Regardless of how the violation occurs, the action attributable to the municipality must provide the "moving force" behind the harm to the plaintiff.  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

Where a municipal policy "is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).  To be successful,

the plaintiff must "identify a specific deficiency that was obvious and closely related to his injury" to show that the "official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury." *Porro*, 624 F.3d at 1328 (internal quotations omitted).

Mr. Schwers alleged no facts against the City of Albuquerque. (*See* Doc. 6.) However, to the extent Mr. Schwers asserted claims against Chief Schultz in his official capacity, those claims also apply against the City of Albuquerque. *See Hafer*, 502 U.S. at 25. Since it is unclear whether the claims were against Chief Schultz in his individual or official capacity, the Court will construe the allegations liberally, as allegations against City of Albuquerque as well.

Even so, the Amended Complaint can only be construed to include three claims against the City of Albuquerque: (1) "failure of the chain of command to investigate" (Doc. 6 at 6); (2) lack of supervision "indicative of a system which condoned violence against the public" (*id.* at 7); and (3) "failure to provide training on . . . Less-than-Lethal force, report[ing] requirements, accountability requirements," and conducting investigations (*id.* at 4). General statements, such as "failure of the chain of command" and "lack of supervision," are conclusory statements that "are not entitled to the assumption of truth." *See Iqbal*, 556 U.S. at 679. Mr. Schwers also fails to explain how failure to investigate the encounter further violated his constitutional rights. *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) (acknowledging that evidence of a cover up might provide circumstantial evidence of a custom, but otherwise determining that "basic principles of linear time prevent [the court] from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation"). Absent DOJ findings alleged in the Response, the strongest facts are Mr. Schwers' assertion that APD failed to provide training on less-than lethal force and that officers are more likely to use excessive force against "some

7

people" based on characteristics Mr. Schwers exhibited at the time. (Doc. 6. At 2–3.) Yet even here, Mr. Schwers fails to identify the specific deficiency in training that caused excessive force.

### d. Additional Claims in Amended Complaint and Response

The Court further declines to consider other claims alleged in the Amended Complaint and the Response. In the Amended Complaint, Mr. Schwers asserts, but does not expand upon, violations pursuant to city ordinances. (*See id.* at 6 ("[I]t is possible that some of the events could . . . be investigated for other city ordinance violations.").) These allegations are not specific enough to consider. In the Response, Mr. Schwers asserted additional claims against defendants and other individuals, including libel, harassment, lack of due process, and racketeering. (Doc. 15 at 8.) The Court will not address these allegations because the Response cannot supplement claims in the Amended Complaint. *See Bauchman*, 132 F.3d at 550, 558.

## IV. Conclusion

Mr. Schwers alleges that Mayor Berry, Chief Schultz, and the City of Albuquerque violated his rights. However, the Amended Complaint includes no specific facts that support Mr. Schwers' allegation of failure to investigate, train, or supervise. Plaintiff thus fails to state a claim upon which relief can be granted.

**THEREFORE,**

**IT IS ORDERED** that Defendants City of Albuquerque, Richard Berry And Raymond Shultz's 12(B)(6) Motion to Dismiss (Doc. 13), is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**